## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

SAFECO INSURANCE COMPANY OF
AMERICA,

                Plaintiff,

      v.

DISCOVER PROPERTY AND CASUALTY
INSURANCE COMPANY f/k/a
NORTHBROOK NATIONAL,

             Defendant.

Case No.: 05CV 7525(DC)

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

ALAN G. WHITE, ESQ.
OF COUNSEL AND
ON THE BRIEF

Alan G. White, Esq. (AGW 8201)
BONNER KIERNAN TREBACH
  & CROCIATA, LLP
Empire State Building, Suite 3304
New York, New York 10118
(212) 268-7535
(212) 268-4965 Facsimile

# TABLE OF CONTENTS

INTRODUCTION………………………………………………….. 1

LEGAL ARGUMENT

     POINT I -   NEW YORK LAW SHOULD BE APPLIED
               TO THE ISSUES IN THIS MATTER………….   3

     POINT II -  DISCOVER'S CLAIM FOR REIMBURSEMENT
               TO SAFECO POLICY IS BARRED DUE TO LATE
               NOTICE………………………………………...   6

     POINT III -  DISCOVER'S CLAIM FOR REIMBURSEMENT
               UNDER THE SAFECO POLICY IS BARRED
               DUE TO THE FACT THAT THE UNDERLYING
               INJURY OCCURRED SUBSEQUENT TO THE
               LAPSE OF SAFECO'S LIABILITY COVERAGE 11

     POINT IV -  DISCOVER'S CLAIM FOR REIMBURSEMENT
               UNDER THE SAFECO POLICY IS BARRED
               DUE TO PREJUDICE TO SAFECO …………..   14

CONCLUSION………………………………………………………  17

# TABLE OF AUTHORITIES

*Abex Corp. v. Maryland Cas. Co.*,
790 F.2d 119 (D.C. Cir. 1986)……………………………………………… 12

*American Home Products Corp. v. Liberty Mutual Ins. Co.*,
748 F.2d 760 (2d Cir. 1984)……………………………………………… 11

*American Home Assur. Co. v. Republic Ins. Co.*,
984 F.2d 76 (2d Cir. 1993)…………………………………………….. 7

*Argo Corp. v. Greater N.Y. Ins.*,
4 N.Y. 3d 332 (2005)........................................................................................ 6

*Babcock v. Jackson*,
12 N.Y. 2d 481 (1963)…………………………………………………… 4

*Certain Underwriters at Lloyd's London v. Foster Wheeler Corp.*,
36 A.D. 3d 17 822 N.Y.S. 2d 30 (1st Dept. 2006)……………………………... 4

*Children's Hosp. of Buffalo v. Employers Reins. Corp.*,
84 A.D. 2d 933 N.Y.S. 2d 695 (4th Dept. 1981)……………………………… 7

*Continental Cas. v. Rapid American*,
80 N.Y. 2d 640 (1993)…………………………………………………… 12

*Crum & Forster Org. v. Morgan*,
192 A.D. 2d 652, 596 N.Y.S. 2d 472 (2d Dept. 1993)……………………….. 7

*Great Canal Realty Corp. v. Seneca Ins. Co., Inc.*,
5 N.Y. 3d 742 (2005)…………………………………………………… 6

*K.T. v. Dash*,
37 A.D. 3d 827N.Y.S. 2d 112 (1st Dept. 2006)……………………………….. 4

*Lauritano v. American Fidel. Fire Ins. Co.*
3 A.D. 2d 564, N.Y.S. 2d 553, 557 (1st Dept. 1957)…………………………. 7

*Martin v. Edwards Laboratories, Inc.*,
60 N.Y. 2d 417 (1983)……………………………………………………. 20

*Mt. Vernon Vyer Ins. Co. v. Creative Housing Ltd.*,
797 F. Supp. 176 (E.D.N.Y. 1992)………………………………………….. 7

*Olen v. Insurance Co. of N.A.*,
966 F.2d 718 (2d Cir. 1992)……………………………………………….. 6

*Security Mut. Ins. Co. v. Acker-Fitzsimons Corp.*,
31 N.Y.2d 436 (1972)……………………………………………………... 6

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,
12 Cal. App. 4th 763, 15 Cal. Rptr. 2d 815, (Ct. of App. 1993)……………… 14

*Smith v. Hughes Aircraft Co.*,
*22 F. 3d 1432, 1440-41 (9th Cir. 1993)*..…………………………………… 11

*State of New York v. Blank*,
27 F.3d 783 (2[d] Cir. 1994)…………………………………………………. 7, 8. 14

*Steinbach v. Aetna Casualty Insurety Co.*,
81 A.D. 2d 382, 440 N.Y.S. 2d 637 (1st Dept. 1981)………………………… 4

*Stonewall Surplus Lines, Inc. Co. v. Johnson Controls, Inc.*,
14 Cal. App. 4th 637, 646, 17 Cal. Rapt. 2d 713 (1998)…………………….. 5

*Travelers Ins. Co. v Volmar Constr. Co.*,
300 A.D. 2d 40, 752 N.Y.S. 2d 286 (1st Dept. 2002)……………………….. 7

*Unigard Vessi C. Ins. Co. v. North Riv. Ins. Co.*,
7 N.Y. 2d 576 (1992)……………………………………………………… 6

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*,
84 N.Y. 2d 309 (1994)……………………………………………………... 4

## INTRODUCTION

This action involves a dispute between two insurance companies over whether any policy of insurance that plaintiff, Safeco Insurance Company of America (hereinafter "Safeco"), issued to Opthalmic Innovations, Inc. (hereinafter "OII") has any obligation to reimburse Defendant for monies Defendant expended in the defense of OII and settlement in the matter that was filed in the Supreme Court of New York – New York County under the caption *Nahla Osman v. Opthalmic, Innovations International, Herbert L. Gould and Miles A. Galin.* The defendant, Discover Property and Casualty Insurance Company (hereinafter "Discover") was formerly known as Northbrook National and is now part of the Travelers/St. Paul's Group of Insurance Companies.

OII is a Delaware Corporation with its principal place of business in California and is in the business of manufacturing special implanted phakic intraocular lenses for correcting vision. The majority owner of OII at the time in question was Dr. Miles Galin who operated the East Side Opthalmology Group in New York along with Dr. Herbert Gould. At Dr. Galin's request, OII shipped a number of these lenses to the East Side Opthalmology Group. Dr. Gould implanted a lens in the right eye of Nahla Osman on March 20, 1997 and in the left eye on January 20, 1998. Discover's liability coverage to OII terminated on May 9, 1997 with Safeco picking up coverage from May 9, 1997 through May 9, 1998. However, Ms. Osman did not experience any problems with the lenses until either the end of 1999 or the beginning of 2000. She eventually had to have these lenses removed and allegedly suffered damage to her eyes as a result of these implants.

Ms. Osman initiated a lawsuit in the Supreme Court of New York in 2000 against OII and Drs. Gould and Galin. OII forwarded the notice of claim to its insurance agent who in turn

1

placed Discover on notice of the claim. Discover thereupon entered a defense on behalf of OII without any reservation of rights. Despite the fact that Discover was aware of the fact that the lens implant to the left eye took place subsequent to the lapse of its liability coverage and of the fact that Safeco had provided coverage to OII, Discover never made a claim that the Safeco policy may be on the risk until almost four years after the filing of the lawsuit and at such time as the matter was nearing trial.

A new claims supervisor for Discover reviewed the file sometime just prior to August 2004 and directed that the claims handler, LeeRoy Miller, place Safeco on notice. The notice to Safeco was received on August 21, 2004 and assigned to Gerald Paladin. Mr. Paladin made several requests to Mr. Miller for information that would confirm that the Safeco policy was on the risk for this underlying claim, particularly information relating to the date of damage. Mr. Miller was non-responsive and consequently in February 2005 Safeco forwarded correspondence to Discover (and OII) that coverage was declined due to the fact that it was never established that injury took place during the period of Safeco coverage, and due to the fact that notice of the claim was late. After sending a threatening letter that Discover would not provide complete coverage for this claim, it eventually settled the matter on behalf of OII for a complete release. OII has been completely indemnified and has no claim against the Safeco policy.

Subsequent to the settlement, in-house counsel for Discover made another claim against Safeco for recoupement of the settlement and defense costs. In order to clarify the issue, Safeco initiated this coverage action . When Discover finally provided the complete file in the Osman matter, it was confirmed that Ms. Osman's complaints and actual damage did not arise until subsequent to the lapse of the Safeco coverage.

2

## POINT I

### THE COURT SHOULD APPLY THE LAW
### OF THE STATE OF NEW YORK TO THIS ACTION

Since jurisdiction is based on diversity of citizenship, the court should apply the law of the State of New York unless the forum state's conflicts of law principals mandate the application of another state's law.  It is anticipated that Defendant will argue for the application of California law on the grounds that it involves the interpretation of an insurance contract to a California based corporation.  Concededly, there is a conflict between New York and California law as it relates to the issue of late notice.

However, this is not a dispute between an insured and its carrier, but rather a dispute between two insurance companies, neither of which is domiciled in California, over whether one should contribute to the costs incurred by the other in defending and indemnifying the insured over liability that arose in the State of New York.  Consequently, this is not clearly an issue of conflicts relating to contract law.  The underlying lawsuit in this matter arose out of alleged acts of medical malpractice performed by two New York doctors upon a New York residence in the State of New York.  The allegations against OII were that it manufactured a defective product that was shipped to New York and which caused the damage to the New York resident.  Discover's claims handler who had been monitoring this matter from its near inception until settlement is located in the claims office in the State of New York.  Safeco is incorporated in and has its principal place of business in the State of Washington.  Gerald Paladin, who was handling Discover's claim for contribution on behalf of Safeco was located in Indiana.

3

Whether dealing with conflict of laws principles as they apply to contract or tort law, the New York courts have abandoned a strict adherence to relying on the law of the place of contracting or the law of the place of the tort in favor of determining the jurisdiction with the greatest interest in the outcome of the matter. As it relates to conflicts involving torts, the New York Court of Appeals in *Babcock v. Jackson*, 12 N.Y.2d 473, 481 (1963) modified the *lex loci delicti* rule in favor of a more balanced "grouping of contacts" approach. Additionally, such an approach requires an analysis as to whether the purpose of the issue is to regulate conduct (site of tortuous conduct) or to allocate loss. *See, K.T. v. Dash*, 37 A.D.3d 107, 110-111, 827 N.Y.S.2d 112 (1st Dept. 2006). Under either approach, New York has the predominant interest since the tort occurred in New York and the issue involves an allocation of loss arising out of such tort.

Even if this matter is determined to be a contract action, New York courts apply the "most significant relationship," "grouping of contacts" or "center of gravity" test under the Restatement (Second) of Contracts §188(2). *See, Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y. 2d 309, 317 (1994); *Certain Underwriters at Lloyd's London v. Foster Wheeler Corp.,* 36 A.D. 3d 17, 21 822 N.Y.S. 2d 30, 32 (1st Dept. 2006). While it is understood that in the interpretation of insurance policies, the law of the place of contracting is one of the factors, what is more important is the application of the law of the principal location of the insured risk. *See, e.g., Steinbach v. Aetna Casualty Insurety Co.*, 81 A.D. 2d 382, 385, 440 N.Y.S. 2d 637, 640 (1st Dept. 1981).

While OII has its principal place of business in California, it is actually incorporated in the State of Delaware. The application of California law might have more significance if we are talking about an injury that occurred at OII's headquarters or by an automobile accident

4

involving one of its employees. However, this claim arose out of an allegation of a defective product that was distributed worldwide. The insurance policies covering this risk provided worldwide coverage. Additionally, the relevant portions of the insurance policies that are applicable to this litigation constitute standard form language that is not particularly geared to any aspect of California law. Consequently, California is not the principal location of the insured risk involving these lenses since they are distributed worldwide and the risk must be considered at the location where the lens actually causes damages, which in this case is the State of New York. Significantly, even California adheres to this principal as it did in the matter of *Stonewall Surplus Lines, Inc. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 646, 17 Cal. Rptr. 2d 713, 718 (1998), where the court recognized the difference between the law of the jurisdiction where the issue involves first party or other fire insurance and third party liability insurance. In *Stonewall Surplus Lines*, the court applied California law because a California resident was injured from a defective product that was manufactured by a Wisconsin policy holder. In balancing all of the various factors in resolving the issue of choice of law, the great weight clearly rests in the State of New York, particularly when one considers that OII has no further interest in the outcome of this matter and thus any California connection is no longer relevant.

5

## POINT II

### DISCOVER'S CLAIM FOR REIMBURSEMENT TO THE  SAFECO POLICY IS BARRED DUE TO LATE NOTICE

Like most standard form policy language for this type of policy, as a condition of coverage an insured or any other entity claiming coverage or the benefits of such coverage must give prompt notice of a potential occurrence or claim to the carrier as soon as practical. Unlike many other jurisdictions, New York has held to the longstanding principal that a carrier need not demonstrate prejudice in order to deny coverage on the grounds that the notice of occurrence or claim was late. *Security Mut. Ins. Co. v. Acker-Fitzsimons Corp.*, 31 N.Y. 2d 436 (1972). Any unreasonable delay that is not legally excusable constitutes late notice as a matter of law which will result in the forfeiture of coverage. *Unigard Vessi C. Ins. Co. v. North Riv. Ins. Co.*, 7 N.Y. 2d 576, 582 (1992). The New York Court of Appeals has recently reaffirmed this rule of law in *Argo Corp. v. Greater N.Y. Ins., 4 N.Y. 3d 332, 339-40 (2005); Great Canal Realty Corp. v. Seneca Ins. Co., Inc.*, 5 N.Y. 3d 742, 743 (2005). In *Argo*, the court recognized that in certain limited circumstances it would not apply the "no-prejudice rule," but held that the cases before this court "did not abrogate the no-prejudice rule and should not be extended to cases where the carrier received unreasonably late notice of a claim." *Argo* at 339. In *Great Canal Realty*, the Court of Appeals reversed a decision of the Appellate Division which had mistakenly anticipated that the New York Court of Appeals would eliminate the no-prejudice rule.

In an interpretation of New York law the United States Court of Appeals in *Olen v. Insurance Co. of N.A.*, 966 F.2d 718 (2d Cir. 1992) held that notice should be given as soon as practicable under all the circumstances. Nevertheless, whether notice is late is a matter of

6

law.  In *Olin*, the court held that 2 ½ year delay in providing notice was late as a matter of law.  *Id.* at 723-24.

An insured or other claimant is not relieved of its obligation to provide timely notice because the carrier may have knowledge of the claim from an outside source.  *See*, *e.g.*, *American Home Assur. Co. v. Republic Ins. Co.*, *984 F.2d 76, 78 (2d Cir). cert. denied, 508 U.S. 1973 (1993); see also, Travelers Ins. Co. v Volmar Constr. Co.*, 300 A.D.2d 40, 43, 752 N.Y.S. 2d 286, 289 (1st Dept. 2002); *Mt. Vernon Vyer Ins. Co. v. Creative Housing Ltd.*, 797 F. Supp. 176, 184 (E.D.N.Y. 1992).

This requirement of prompt notice also applies to other claimants such as an injured party or other carriers.  In New York, an injured plaintiff or claimant has a right to a direct claim against the tortfeasor's policy and is not necessarily bound by any coverage that the actual insured may have lost due to last notice.  However, such a claimant, while guided by different considerations, still must provide prompt notice.  *See*, *Lauritano v. American Fidel. Fire Ins. Co.*, 3 A.D. 2d 564, 568, 162 N.Y.S. 2d 553, 557 (1st Dept. 1957), *aff'd*, 4 N.Y. 2d 1028 (1958); *Children's Hosp of Buffalo v. Employers Reins Corp.*, 84 A.D 2d 933, 933, 446 N.Y.S. 2d 695, 696 (4th Dept. 1981).

In reference to claims by other carriers, the courts have recognized a difference between those carriers whose relationship is primary/excess, co-insurers, or reinsurers from those carriers that are successive to each other.  A detailed discussion of these various relationships is contained in the case of *State of New York v. Blank*, 27 F.3d 783 (2d Cir. 1994).  *Blank* was involved a claim, among other things, where a carrier was seeking contribution from a predecessor carrier for contribution in claims involving the underlying lawsuit.  The *Blank* Court recognized a previous New York State Court decision (*Crum & Forster Org. v.*

7

*Morgan*, 192 A.D. 2d 652, 654, 596 N.Y.S. 2d 472, 474 (2d Dept. 1993)), as holding that a

co-insurer must show prejudice in late notice in order to defeat the claim of another insurer.

However, the *Blank* court recognized the difference with that case in that co-insurers provide

coverage to an insured for the same time period and their interests are fairly identical.

However, the *Blank* court distinguished that situation by holding

> The rationale supporting strict enforcement of a notice-of-
> occurrence and notice-of-claim requirements (citation omitted) applies in
> this case, where a successive insurer seeks contribution from a previous
> insurer. If anything, the rationale for requiring notice in the case of
> successive insurers is stronger than the rationale for requiring notice in the
> case of co-insurers. Because co-insurers have issued policies to the
> insured for the same time period, their interest in investigating the
> occurrence and controlling litigation and settlement negotiations closely
> converge...because successive insurers cover different time periods, their
> interest in investigating occurrences necessarily diverge. Each insurer has
> an interest in establishing that the occurrence took place during the time
> period covered by the other insurer. Because these interests diverge, if a
> successor insurer hopes to benefit from an insured's policy with a previous
> insured, the successor must comply with the insured's obligations under
> the policy.

*Id*. at 794. While in the case at bar Discover is a predecessor insurer seeking coverage from

the successor carrier, the rationale is the same. Consequently, the issues here are not similar

to those where prejudice may be required for an excess carrier attempting to decline due to

late notice or in a situation of a reinsurer.

The fact that Discover waited four years to place Safeco on notice that a Safeco policy

may be implicated clearly constituted late notice as a matter of law under New York law. In

fact, the record clearly indicates that the initial claims handler on behalf of Discover

recognized that a subsequent carrier's policy may be implicated in the *Osman* claim,

however, there was no follow up. There has been no written record produced by Discover,

the insurance broker, or from Safeco's files that Safeco was ever placed on notice of this

8

claim prior to August 2004. Mr. Miller's excuses that he "thought" that a previous handler had placed Safeco on notice or that he "thought" that he may have had a discussion with a Safeco claims handler (not verified by any written record) or that he had a large case load do not constitute legal justifications for failing to provide prompt notice under New York law or probably the law of any other jurisdiction in this country. **See Miller Deposition at 30-31, 34, 50-51, 54-55; Exhibit K.**

The key to providing prompt notice to Safeco rested entirely with Discover. The insured forwarded the claim of the *Osman* suit to its broker, received a letter from Discover that it was being defended without any reservation, and clearly had no reason to believe that there was any problem of coverage for this claim. The same rationale would apply to the broker. On the other hand, Discover was fully aware of the fact that a lens was implanted into the left eye subsequent to the lapse of its policy period. Discover would have been aware of this fact as soon as it received the underlying complaint. Additionally, the Discover claims handler was certainly in the most superior position to fully appreciate the facts of the underlying litigation through reports of counsel it had retained to defendant OII. Clearly, Discover should have been aware of the fact that there was a question as to whether its own policy was ever triggered at the time Nehla Osman was deposed. Moreover, Mr. Miller was certainly aware of the fact that Safeco had provided coverage at some period of time to OII since Safeco was defending OII a similar case that arose from a different time frame.

It was not until a new claims supervisor reviewed the file that the order went out to place Safeco on notice. While this notice to Safeco was purportedly done on behalf of OII, it is quite clear that it was Discover that was making this claim since Discover was the one that was defending OII and had an obligation to indemnify it. Even after notice was given to

Safeco, Mr. Miller was completely uncooperative in providing certain information to Safeco in order to afford Safeco the opportunity to fully evaluate the claim. Moreover, once Safeco declined coverage, Discover for the first time attempted to claim it would not cover part of the claim.

In light of the clear and undisputed facts of this matter, notice of the claim to Safeco was unreasonably late as a matter of law and Discover should not be entitled to any contribution to the costs it incurred for the defense and indemnity of OII.

## POINT III

### DISCOVER'S CLAIM FOR REIMBURSEMENT UNDER THE SAFECO POLICY IS BARRED DUE TO THE FACT THAT THE UNDERLYING INJURY OCCURRED SUBSEQUENT TO THE LAPSE OF SAFECO'S LIABILITY COVERAGE

The liability policy that was issued by Safeco to OII is commonly referred to as an occurrence based policy which will apply coverage if the "bodily injury" occurs during the policy period.    These standard policy provisions have been uniformly interpreted to mean that coverage is triggered not necessarily by the negligent act but when the injury actually takes place. See, *e.g., Smith v. Hughes Aircraft* Co, 22 F.3d 1432, 1440-41 (9th Cir. 1993). While in many cases the happening of the event that leads to injury and the actual injury will occur simultaneously, there are a number of instances where the cause of an event and the subsequent injury will take place at different times and during different insurance policy periods.

The so-called issue of trigger of coverage has spawned  significant litigation,  usually in the asbestos or environmental coverage context.  Various courts have come to difference conclusions as to when the injury takes place with some declaring it is the time of initial exposure while others concluding that it is a point in time when the injury manifests itself. Other courts have adopted multiple approaches to this issue.  The leading case in New York is a 1984 decision from the United States Court of Appeals for the Second Circuit in the matter of *American Home Products Corp. v. Liberty Mutual Ins. Co.*, 748 F.2d 760, 765-66 (2d Cir. 1984).  *American Home Products* involved insurance coverage claims of injuries arising out of the distribution of several of its pharmacological products, including DES. The Court of Appeals reviewed the various competing theories as to the issue of trigger of

11

coverage and concluded that New York courts would adopt the "injury-in-fact" theory as the only logical conclusion that could be drawn from the plain language of the insurance policies. In other words, coverage was triggered when an injury in fact took place. While a determination of when an injury takes place is fact sensitive, the *American Home* Products court determined that injury was not necessarily when the disease was diagnosable or when an injured party may have actually ingested the drug. *See*, also *Abex Corp. v. Maryland Cas. Co.*, 790 F.2d 119, 124-25 (D.C. Cir. 1986), which followed *American Home Products* as the controlling law of the State of New York.

Although not specifically deciding on the issue, the New York Court of Appeals appeared to have discussed the holding in *American Home Products* favorably in its opinion discussing the various trigger of coverage theories. *Continental Cas. v. Rapid American*, 80 N.Y. 2d 640, 650-51 (1993). The Court of Appeals described the "injury-in-fact" as the onset of injury or disease whether discoverable or not.

Also highly informative to the issues in this matter is the decision in *Martin v. Edwards Laboratories, Inc.*, 60 N.Y. 2d 417, 425-28 (1983), where the court held (albeit in the context of the statute of limitations dispute) that the trigger of coverage for injury resulting from the malfunction of an implanted heart valve is the date of injury resulting from the malfunction, not the date of implementation.

Based on the deposition transcript testimony of Nehla Osman, she did not register any complaints about the lens implants until late 1999 or early 2000. It was at this point that she began experiencing irritation to her eyes and the subsequent problems which resulted in the removal of the lenses and other related surgeries. Using the analogous type situation in *Martin* matter, the issue was at what point in time Ms. Osman actually suffered injury. Other

than the usual discomforts associated with surgery, there was nothing that was developed in the underlying case that would show that the injury started at the time of implants. Like cases involving the ingestion of a drug that later results in a subsequent problem, the injury took place at the point in time that Ms. Osman began to experience the discomfort.

Consequently, the policy of liability insurance that was issued by Safeco to OII was not triggered because the injury took place subsequent to Safeco's period of coverage. It would also appear that the Discover policy was also not triggered. However, Discover in fact entered a defense without a reservation of rights and at no point attempted to contest coverage even though the facts from the underlying litigation would have justified such an event.

## POINT IV

### DISCOVER'S CLAIM FOR REIMBURSEMENT UNDER THE SAFECO POLICY IS BARRED DUE TO PREJUDICE TO SAFECO

Even if it is determined that Safeco must show prejudice in order to prevail on its late notice defense, it is respectfully submitted that under the clear facts of this case Safeco has suffered substantial prejudice because of the inordinate delay in advising Safeco that its policy was on the risk coupled with the uncooperative actions by Discover in failing to properly supply Safeco with complete information of the facts in the underlying litigation.

It is universally recognized that the purpose of requiring prompt notice of an occurrence or claim to an insurance carrier is to permit the insurance carrier the opportunity to investigate the facts of the claim before memories or other relevant issues become lost or stale and to afford the carrier an opportunity to properly defend the action, assess the merits and enter into potential early settlements. See, *State of New York v. Blank*, 27 F.3d supra at 794 *citing Commercial Union Ins. Co. v. International Flavors*, 822 F.2d 267, 271 (2d Cir. 1987). Clearly, the situation of having a carrier come in at the last minute on the eve of trial without the ability to properly defend either itself or its insured is a completely undesirable result. Even California law recognizes this right of a carrier and will in fact hold that late notice of a claim may be a bar to coverage if in fact the carrier has suffered prejudice in the handling of such a claim. *See*, *e.g.*, *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 763, 15 Cal. Rptr. 2d 815, 846-47 (Ct. of App. 1993).

In this matter, Discover was providing a defense, and presumably overseeing such defense for a period of four years without advising Safeco that its policy may be implicated

14

even though Discover knew early on that one of the lenses had been implanted after its coverage lapsed and then subsequently learned, at least by 2002, that damage to both eyes may very well have taken place beyond its period of coverage. This was not a situation where Discover had a last minute revelation about the potentiality of another carrier being involved. Rather, it was at the point in time when the underlying case was concluding and a file was being reviewed that a last minute decision was made to place Safeco on notice.

Even after such notice was given, Discover appeared intent on not supplying Safeco with the requested underlying information in order to permit Safeco to make relevant decisions, including on the issue of coverage. While Discover's actions both before and after notice to Safeco may not have been malevolent but rather due to sheer inattention, Discover's actions were still inexcusable. One can easily discern from the testimony of Mr. Miller that the decision to notify Safeco in August 2004 was made by his superiors and that he did not appear motivated to provide the appropriate information to Safeco. **Miller Deposition at 55-56. Exhibit K.** The attitude was more one of "the case is coming to an end, we must either settle or try, you are now on notice, you do not need anymore information, just simply agree to pay 50% of damages."

When Safeco did not receive the appropriate information from Discover, it formerly declined coverage at which time Discover sent a wholly inappropriate letter to both the insured and Safeco stating that it would not provide any indemnity for injuries arising out of the left eye. Despite the clear tone of the March 14, 2005 letter to OII (**Exhibit Q**) in his deposition Mr. Miller denied that it was ever intended as a threat or an effort to decline coverage by Discover. **Miller Deposition at 83-85. Exhibit K.** Additionally, both Mr. Miller and Mr. Bell conceded that due to the lapse of four years, Discover could not

appropriately decline coverage to OII for any injury arising out of the Osman's damage to the left eye. *Id* **at 71-73.  Bell Deposition at 26-29.  Exhibit L.**  In any event, the letter was an idle threat since Discover in fact settled the entire amount for OII.

However, even after Safeco declined coverage, it did afford Discover the opportunity to provide the appropriate information that would justify Safeco participating in any defense or indemnity.  Again, Discover declined and it was not until after this lawsuit was commenced with discovery demands was the entire underlying file was produced.

By its actions, Discover totally prevented Safeco from any possible investigation into the date of damage thus determining whether a Safeco policy was actually triggered.  In all likelihood, even by August 2004 an attempt to vigorously pursue this potential bar to coverage was lost due to the fact that discovery in the underlying matter was close to conclusion.  By refusing to respond to Safeco's requests as to why there was such a delay in notifying Safeco of coverage, and providing proofs as to the course of any injury to Ms. Osman, Safeco was severely prejudice.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court enter an order declaring that any policy of insurance issued by Safeco to OII has no obligation to reimburse Discover for any liability payments or defense costs it has incurred in reference to the matter of *Nehla Osman v. OII.*

Dated:  June 18, 2007
New York, New York

Respectfully submitted,

By:_____
      Alan G. White, Esq. (AGW 8201)
      BONNER KIERNAN TREBACH
        & CROCIATA, LLP
      Empire State Building, Suite 3304
      New York, New York 10118
      (212) 268-7535
      (212) 268-4965 Facsimile

17