Empire State Building
Suite 3304
New York, NY 10118
Telephone: (212) 268-7535
Facsimile: (212) 268-4965
bktc@bktc.net
www.bktc.net

# BONNER
# KIERNAN
# TREBACH &
# CROCIATA, LLP

Connecticut
Maryland
Massachusetts
New Jersey
New York
Pennsylvania
Rhode Island
Virginia
Washington, DC

August 9, 2007

**Via electronic filing**
Clerk, United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    Safeco Insurance Company of America v. Discovery Property and
           Casualty Insurance Company, et al.
           Civil Action No.  05CV8625(DC)
           BKT&C File No.: 0426.0089

Dear Sir or Madam:

      This office represents Plaintiff  Safeco Insurance Company of America in the
above captioned matter.

      Enclosed for filing is a reply Memorandum of Law in Support of Safeco's Motion
for Summary Judgment.

      Please do not hesitate to contact us if you have any questions.

Respectfully,

Alan G. White

Alan G. White
AGW/am
Enclosures
cc:     Hon. Denny Chin, U.S.D.C.J. (via hand delivery)
       Andrew Premisler (via electronic filing and regular mail)

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>DISCOVER PROPERTY AND CASUALTY INSURANCE COMPANY f/k/a NORTHBROOK NATIONAL,<br><br>      Defendant. | Case No.:  05CV 7525(DC) |

## SAFECO INSURANCE COMPANY OF AMERICA'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

ALAN G. WHITE, ESQ.
OF COUNSEL AND
ON THE BRIEF

         Alan G. White, Esq. (AGW 8201)
         BONNER KIERNAN TREBACH
          & CROCIATA, LLP
         Empire State Building, Suite 3304
         New York, New York 10118
         (212) 268-7535
         (212) 268-4965 Facsimile

# TABLE OF CONTENTS

**TABLE OF CONTENTS**…………………………………………………….. i

**TABLE OF AUTHORITIES**………………………………………………… ii

**INTRODUCTION**………………………………………………………….. 1

**ARGUMENT**

      THE QUESTION OF FIRST NOTICE TO
      SAFECO OF THE UNDERLYING CLAIMS………………………….. 1

      SAFECO'S INVESTIGATION OF THE OSMAN CLAIM…………….. 4

      THE ISSUE OF OCCURRENCE…………………………………………5

      CHOICE OF LAW ISSUE………………………………………………...5

      ISSUES OF CONTRIBUTION……………………………………………5

**CONCLUSION**………………………………………………………………….. 6

i

# TABLE OF AUTHORITIES

*Edinburgh Assur. Corp. v. R.L. Burns Corp.,*
479 F.Supp. 138, 144-47 (C.D. Cal.)( aff'd 669 F.2d 1259 (9th Cir. 1982)………….... 2

*Guardian Life Ins. Co. v. Chemical Bank,*
94 N.Y. 2d 418, 424-25 (2000)…………………………………………………………… 2

*Howard Fuel v. Lloyds Underwriters,*
558 F.Supp. 1103, 1106 n.7, 1105 (S.D.N.Y. 1984)…………………………………… 2

*Osborn v. Ozlin,*
310 U.S. 53, 60-61 (1940)……………………………………………………………… 2

*Security Mut. Ins. Co. v. Acker-Fitzsimmons,*
31 N.Y.2d 436, 442n.3 (1972)……………………………………………………………2

## INTRODUCTION

Plaintiff Safeco Insurance Company of America ("Safeco") respectfully submits this reply memorandum in support of its motion for summary judgment and in opposition to defendant's cross-motion for summary judgment. Most of the arguments raised in defendant's memorandum in support of its motion were addressed in the initial brief filed by this party.

## ARGUMENT

### THE QUESTION OF FIRST NOTICE TO SAFECO OF THE UNDERLYING CLAIMS

Discover's brief completely avoids the issue as to its own conduct in the four year delay in notice to Safeco or in justifying why Discover failed to provide certain necessary requested information to Safeco from August 2004 until this lawsuit was filed. Rather, Discover attempts to justify timely notice by claiming that the "insured" provided notice to Safeco's "agent" in 2000. As Safeco addressed in its moving papers, the issue in this litigation is not coverage for OII, but rather Discover's request that Safeco reimburse Discover for a portion of the indemnity and defense costs that Discover paid to settle the underlying matter. This lawsuit involves the validity of Discover's claim.

Discover's brief attempts to convey the impression that the Empire Company was acting as the exclusive agent for Safeco. Discover justifies this argument by referring to the term "registered licensed agent" that appears on the Safeco policy along with certain testimony given by LeeRoy Miller, an employee of Discover. However, the term "insurance agent" generically refers to an individual or agency that produces or obtains coverage for insureds and could apply to a direct employee of an insurance company, an independent insurance agent, or a broker who

acts exclusively on behalf of insured.[1]  The fact that the term "licensed registered agent" appeared on the Safeco policy as a description of the Empire Company cannot be construed to mean that Empire was acting solely in the interests of Safeco.  It is not the term used by the insurance producer that is significant, but the producer's function. *See, Guardian Life Ins. Co. v. Chemical Bank*, 94 N.Y.2d 418, 424-25 (2000).

It was never established by Discover that Empire was strictly acting as an agent of Safeco.  Contrary to the conclusion drawn at p. 11 of Discover's brief, when questioned by Discover's counsel Gerald Paladin stated that he did not know what the relationship was between Empire and Safeco.  **Exhibit J to Discover's Moving Brief at pp. 40-43**.  Discover also claims that Empire admitted that it was acting as the agent of Safeco.  *See* **Discover's Moving Brief at p. 5, n.2**.  This is inaccurate.  Discover has produced no direct statement from anyone at Empire to this effect.  What the brief does is refer to the testimony of LeeRoy Miller who stated that Ken Porter of Empire admitted that he was an agent of Safeco.  *See,* **Exhibit M to Discover's Moving Brief at pp. 62-64**.  This is a hearsay statement and totally questionable since Mr. Miller never recorded any such communication from Mr. Porter.  It should be noted that Mr. Miller was the claims representative of Discover who failed to place Safeco on notice of the Osman claim until directed to do so by a new supervisor.  Moreover, Mr. Miller wrote a letter to OII making the statement that Empire was in fact OII's agent. *Id. at p. 64. See also*, **Exhibit N to Safeco's Moving Brief**. Not only is Mr. Miller's testimony completely unreliable, but Discover's attempt to claim that Empire was the agent of Safeco is wholly inappropriate in light of the referenced letter.

---

[1] For a discussion of the relative differences between a "producer" of insurance acting on behalf of an insured or behalf of the insurer, *See, Osborn v. Ozlin,* 310 U.S. 53, 60-61 (1940*); See also, Security Mut. Ins. Co. v. Acker-Fitzsimmons*, 31 N.Y.2d 436, 442n.3 (1972); *Howard Fuel v. Lloyds Underwriters*, 558 F. Supp. 1103, 1106 n.7, 1105 (S.D.N.Y. 1984); *Edinburgh Assur. Corp. v. R.L. Burns Corp.*, 479 F.Supp. 138, 144-47 (C.D. Cal.), *aff'd* 669 F.2d 12589 (9th Cir. 1982).

2

Most importantly, a review of the policy that Discover issued to OII reveals that the broker/producer was the same Empire Company. **Exhibit D to Discover's Moving Brief at p. 1.** Additionally, there is a documented record that Safeco decided not to provide liability insurance after the first year of the policy and advised Mr. Porter of Empire to arrange for liability coverage for Empire from another source. **Exhibit G to Safeco's Moving Brief.** The only logical conclusion that can be drawn from this documented evidence is that Empire was acting as either a broker or independent insurance agent whose client was in fact OII and that Empire was arranging for coverage for OII from different carriers. Moreover, if Discover truly believed that Empire was an exclusive agent of Safeco, it could have arranged for a deposition of an Empire employee and failed to do so. To the extent it is construed that Empire was an agent of Safeco, it was also acting as an agent for Discover and made the decision to only place Discover on notice of the OII claim in 2000.

Discover's attempt to claim that Safeco has admitted that Empire was its agent due to the fact that a response to certain requests to admit was made over 30 days from the time they were served, is contradicted by the clear documentary evidence concerning the role of Empire as arranging coverage from different carriers. Additionally, Safeco will request that the Court entertain a motion to permit its response to Discover's request to admit.

Discover also persists in the myth that Safeco was placed on notice of the Osman claim by certain correspondence it received in 2000. According to the certification of Thomas Bell, this included the letter that Empire forwarded to Discover notifying it of the Osman claim and a letter that Empire forwarded to Safeco concerning the Shultzer claim. In his certification Mr. Bell states that Safeco did not respond to either letter. *See,* **Discover's Moving Brief at pp. 5-6.** For Mr. Bell to make the statement that Safeco did not respond to the Shultzer letter is patently

3

false. Safeco in fact was defending OII in the Shultzer matter. Moreover, both letters are merely advising Safeco of a companion case and the clear wording of the correspondence states that the Osman claim did not arise out of an injury that took place during the Safeco period of coverage. There was nothing for Safeco to respond to.

A question has arisen as to when Safeco actually received a copy of the underlying complaint. Discover has produced a letter from Mr. Porter to Gerald Paladin forwarding several documents. **Exhibit N-3 to Discover's Moving Brief.** In Discover's brief the allegation is made that a copy of the complaint was forwarded with this letter. **Discover's Moving Brief at 6.** However, a review of the letter makes no reference to the forwarding of a complaint, but merely a summons along with other documents.

## SAFECO'S INVESTIGATION OF THE OSMAN CLAIM

Discover also makes the claim that Safeco's declination of coverage was untimely under New York and California law. Again, Discover never addresses the issue as to why it failed to cooperate with legitimate requests for information from Discover. Rather it states that Safeco could have contacted the insured to obtain certain information. It was clear from the outset that this was a claim that was really being generated by Discover and not so much OII, since OII had already been guaranteed coverage. Moreover, the information sought by Mr. Paladin needed to make a coverage decision is the type that would be in the possession of Discover, or the attorney retained by Discover to defend OII. Interestingly, the letter produced by Discover from Mr. Porter to Mr. Paladin states that the issue as to when the occurrence took place is questionable. **Exhibit N-3 to Discover's Moving Brief.** Thus, if this letter was received by Mr. Paladin then it further bolsters the issue of whether an occurrence took place during the Safeco period of coverage.

4

## THE ISSUE OF OCCURRENCE

Discover's only argument that an injury took place during the period of Safeco coverage is based on the conclusory statement of Thomas Bell.  Mr. Bell  merely alleges in his certification that separate injuries took place in 1996 and 1997. **Bell Declaration at para. 5.** However, the sole basis for this statement is the date that the lenses were implanted in Ms. Osman.  Clearly, he is equating the date of injury with the date of implantation.  Safeco has referred to direct evidence taken from the record of the underlying litigation that the injury (ies) did not take place until subsequent to the lapse of Safeco coverage.

## CHOICE OF LAW ISSUE

Discover's brief attempts to negate the late notice issue by arguing for the application of California law.  Safeco addressed this issue in its initial filing.  However, Safeco directs the Court's attention to the attached letter which was forwarded by Eastside Opthalmalic Group (of New York City) to Ms. Osman under OII letterhead. **Attached as Exhibit X to Certification of Alan G. White, Esq.**  This letter is further proof of the fact that the Eastside Opthalmalic Group, which was the majority owner of OII, was basically in control of OII since it clearly had access to its letterhead, and further demonstrates that OII had a significant presence in the State of  New York.

## ISSUES OF CONTRIBUTION

Discover argues that it should be entitled to reimbursement of two-thirds of the underlying settlement along with counsel fees.  There can be little question but that Discover was fully aware that it was legally responsible to cover this entire claim and that a settlement agreement, made by counsel selected by Discover that attributed two-thirds of the injury to the

left eye, was a sham and not really necessary to the underlying settlement. Counsel for Ms. Osman would have little or no interest in where the settlement proceeds came from.

To the extent there is a judgment that the Safeco policy is triggered, Safeco requests that the Court defer a final decision on the issue of reimbursement. As it pertains to counsel fees, the only documents submitted to the Court was a running balance without a specific description of the legal activities performed. Moreover, there are certain entries for payments dated 2006 which post dates the settlement in this matter. Moreover, Discover can hardly be reimbursed for counsel fees it incurred prior to 2004 when Safeco finally received notice of the Osman claim.

CONCLUSION

For the foregoing reasons it is respectfully requested that this court enter an order declaring that the policy of insurance issued by Safeco to OII is not liable to reimburse Discover for any costs it incurred in indemnifying or defending OII in the underlying litigation.

Dated: August 9, 2007
New York, New York

Respectfully submitted,

By: _____
Alan G. White, Esq. (AGW 8201)
BONNER KIERNAN TREBACH
& CROCIATA, LLP
Empire State Building, Suite 3304
New York, New York 10118
(212) 268-7535
(212) 268-4965 Facsimile

6

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAFECO INSURANCE COMPANYOF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DISCOVER PROPERTY AND CASUALTY INSURANCE COMPANY f/k/a NORTHBROOK NATIONAL,<br><br>Defendant. | Case No.: 05CV 7525(DC)<br><br>**CERTIFICATION OF**<br>**ALAN G. WHITE, ESQ.** |

I, Alan G. White, Esq., being of full age upon my oath depose and say:

1.      I am an attorney-at-law for the State of New Jersey and have been admitted pro hac vice to represent plaintiff in this matter.

2.      Attached as Exhibit X to this Reply Brief and as an addition to the exhibits attached to Safeco's Moving Brief is a true and accurate copy of correspondence dated June 30, 2000 which was produced by Discover in this matter.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Alan G. White, Esq.

Dated:  August 9, 2007





**Ophthalmic
Innovations
International, Inc.**
500 North Claremont Blvd., Claremont, CA 91711 USA • tel (909) 626-4558
fax (909) 626-7338 • email: info@oii–iol.com • site: www.oii–iol.com

June 30, 2000

Dear Nahla Osman:

We are writing to you because you are a patient who has undergone phakic intraocular implant surgery in which you received lens(es) manufactured by Ophthalmic Innovations International, Inc. As you may recall, this lens, while approved in Europe and in other countries at the time of your surgery, had not been approved by the FDA for either sale or investigational use. OII has filed for an investigational device exemption with the FDA, which is the first step in seeking FDA approval. The FDA has asked us to contact every patient to reemphasize that the lens was not and is not currently FDA approved for either sale or investigational use, that complications can occur and that long term follow-up is essential.

As was mentioned in the informed consent, complications from any eye surgery can affect the cornea, iris, lens and the entire visual system even years later. Complications which have been observed in some patients with phakic intraocular lenses include: corneal swelling and clouding, chronic inflammation, altered pupils, scarring, intraocular pressure elevation, visual distortions, light sensitivity, and possibly . cataracts. In our follow-up of your case, as of your last visit on 3/2/00, none of these potential complications has occurred.

When a lens has not been approved by the FDA, it is especially important that patients continue regular follow-up exams. This is true even if you are not experiencing any complications. You should be seen by an ophthalmologist at least once a year. If you have not seen anyone in the last year, please make a free appointment with us now, or see your local ophthalmologist. If you do not have an ophthalmologist, let us know, and we will refer you to an ophthalmologist familiar with this subject area. If you are experiencing any symptoms (pain, red eye, light sensitivity, blurred or double images) you should be seen immediately.

We are enclosing an implant identification card for you to show to any ophthalmologist you may see in the future. This will tell the ophthalmologist the refractive data that was present at the time of your surgery and the kind of lens that was used. You should provide a copy of this letter to your current ophthalmologist.

Please return the enclosed reply form in the envelope provided so that we may ensure the accuracy of our records. Any information regarding you will remain confidential and will only be released to the FDA upon their request.

We thank you for your cooperation. If you have any questions, please call East Side Ophthalmology at 212 922-1400.

Sincerely,

*East Side Ophthalmology*

PLAINTIFF'S
EXHIBIT   4

12/11/0 L     H L

ULF 005989